Kenneth K. Ho, Esq.
136-19 38th Avenue, 4th Floor
Flushing, New York 11354
Phone: (718) 886-1541
Fax:  (718) 762-6913
Email: kenkhoattorney@yahoo.com

*Attorney for the Plaintiffs*

UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
_____X
YEUNG WANG, GARY SZE KONG, LIN XUI YING,
XIN LI, ZHI-FENG CAI, TOMMY CHANG,
KAM-CHOW KONG,                                                    Civil Action No. _____
LIN CHI CHU, FAI LAM, SZE PING CHENG,
STANLEY HOK KOO KAM, JIMMY SHAO,

                                        *Plaintiffs,*          **VERIFIED COMPLAINT**

                    v.

COOL TECHNOLOGIES, INC., formerly known as
HPEV, INC., Timothy Hassett, and Brian Duffy

                                        *Defendant.*
_____X

### VERIFIED COMPLAINT

Plaintiffs, YEUNG WANG, GARY SZE KONG, LIN XUI YING, XIN LI, ZHI-FENG

CAI, TOMMY CHANG, KAM-CHOW KONG, LIN CHI CHU, FAI LAM, SZE PING

CHENG, STANLEY HOK KOO KAM, and JIMMY SHAO (collectively "the Plaintiffs"), by

their undersigned attorney, Kenneth K. Ho, Esq., bring this action by verified complaint, to

recover damages arising out of the purchase of shares by the Plaintiffs from COOL

TECHNOLOGIES, INC., formerly known as HPEV, INC., a Nevada Corporation ("the

Defendant"), with the Defendant breaching his contract to register the said shares for resale by

refusing to register the said shares with the Securities and Exchange Commission ("the SEC").

1

The shares have lost approximately95% of their value since the date on which the registration statement should have been filed.

## PARTIES

**Plaintiffs:**

1.  The Plaintiff, YEUNG WANG, is a resident of Westchester County, in the State of New York.

2.  The Plaintiff, GARY SZE KONG, is a resident of New York County, in the State of New York.

3.  The Plaintiff, LIN XUI YING, is a resident of Queens County, in the State of New York.

4.  The Plaintiff, XIN LI, is a resident of Queens County, in the State of New York.

5.  The Plaintiff, ZHI-FENG CAI, is a resident of Suffolk County, in the State of New York.

6.  The Plaintiff, TOMMY CHANG, is a resident of New York County, in the State of New York.

7.  The Plaintiff, KAM-CHOW KONG, is a resident of Queens County, in the State of New York.

8.  The Plaintiff, LIN CHI CHU, is a resident of Nassau County, in the State of New York.

9.  The Plaintiff, FAI LAM, is a resident of Queens County, in the State of New York.

10. The Plaintiff, SZE PING CHENG, is a resident of Suffolk County, in the State of New York.

11.     The Plaintiff, STANLEY HOK KOO KAM, is a resident of Queens County, in the State of New York.

12.     The Plaintiff, JIMMY SHAO, is a resident of Queens County, in the State of New York.

13.     Of the twelve Plaintiffs, six reside in Queens County, two reside in Suffolk County, one resides in Nassau County, one resides Westchester County, and two reside in New York County. From the foregoing, it is evident that three quarters of the Plaintiffs reside within the Jurisdiction of the United States District Court for the Eastern District of New York, with the remaining Plaintiffs being within easy commuting distance of the said Court.

**Defendants:**

14.     The Defendant, COOL TECHNOLOGIES, INC., formerly known as HPEV, INC. ("HPEV"), is a corporation formed under the laws of the State of Nevada, with its corporate offices in Clark County, Nevada, and main business offices in Hillsborough County, Florida. It does not maintain a presence or do business in New York State, nor is it registered with the Secretary of State for the State of New York as a foreign company doing business in New York.

15.     The Defendant, Timothy Hassett ("Hassett"), is a resident of Pasco County, Florida, and the Chief Executive Officer of the Defendant HPEV, both currently, and at all material times.

16.     Brian Duffy ("Duffy") was, on information and belief, a consultant to HPEV at all material times, and a resident of Florida currently and at all material times.

**JURISDICTION AND VENUE**

17.     This Court has original jurisdiction over the parties to this action pursuant to 28 U.S.C. § 1332, as the Plaintiffs are all residents of the State of New York, and the Corporate

3

Defendant is a resident of Nevada and Florida, with the individual Defends being residents of Florida, and the amount in controversy exceeds the minimum amount required to give this Court jurisdiction pursuant to 28 U.S.C. § 1332.

18.    Venue is proper as three quarter of the Plaintiffs reside in Queens, Nassau, and Suffolk Counties, and the material facts giving rise to this action occurred in Queens County.

## DEFINITIONS:

19.    Registration and registration of the shares and registering as used herein refers to the filing of a Registration Statement on Form S1 with the Securities and Exchange Commission of the United States.

20.    Registration of shares and registering shares refers to the filing of a Registration Statement on Form S1 with the Securities and Exchange Commission of the United States respecting both the shares and warrants purchased by the Plaintiffs from the Defendants.

21.    Shares and warrants refer to the common shares of HPEV.

## FACTS OF THE CASE:

22.    The Plaintiffs incorporate paragraphs 1to 21 herein by reference as though fully restated.

23.    On or about March 1, 2014, the Plaintiffs met with Hassett and Duffy. Hassett identified himself as CEO and founder of HPEV, and Duffy identified himself as a financial consultant to HPEV, with a long term relationship with HPEV.

24.    At all material times, Hassett and Duffy maintained they represented HPEV and were speaking for HPEV as senior executive and senior consultant.

25.    Hassett and Duffy explained that HPEV was the owner of unique technologies that would revolutionize the automotive world, and had contracts worth "10's of millions of

dollars" which would start cash flowing within months. The Plaintiffs were informed that the said contracts were signed or being signed.

26.     Hassett and Duffy further explained that pursuant to an earlier private placement authorized by HPEV some shares had remained unsold, and created a unique opportunity for investors to purchase common shares and warrants of HPEV at $0.45 per unit, each unit being composed of one share coupled with one warrant for purchase of one common share at a price of $0.60 per share. The said shares and warrants would be registered within 30 days in a registration statement on form S1 to be filed with the Securities and Exchange Commission of the United States (the "SEC"). However, the Defendants asked for a 90 day allowance, to cover the chance of any technical difficulties.

27.     Plaintiff Gary Sze Kong was further informed by Hassett that that the shares and warrants were to be registered with the SEC on form S1, so that they could become free trading upon the said statement being declared effective by the SEC, when $1,000,000 had been raised in the instant private placement. Hassett and Duffy both confirmed that the said $1,000,000 had been exceeded the previous July (July, 2013).

28.     Hassett and Duffy, jointly and severally, explained on March 1, 2014, that the shares and warrants had not been registered in anticipation of the sale of the shares and warrants, now being offered to the Plaintiffs, being sold to another third party. The sale had fallen through, giving the Plaintiffs a unique opportunity purchase the shares and warrants. Once purchased, the shares and warrants would be registered within 30 days (but the Plaintiffs should allow 90 days in case there were technical difficulties), as there was already a registration statement on Form S-1 being prepared for submission to the SEC, and registration would be complete within 90 to 150

days of the purchase of the said shares and warrants by the Plaintiffs, dependent upon the timing of the registration statement being declared effective by the SEC.

29. The Plaintiffs believed the representations of Hassett and Duffy, and relied on the representations in purchasing the shares and warrants. While the shares were being purchased as investments, their liquidity was of paramount importance to the Plaintiffs, as none had ever purchased "penny stock" or stock restricted in the ability to sell the same.

30. If the shares were to remain illiquid for over four to five months, none of the Plaintiffs would have purchased the shares and warrants offered by HPEV, and Hassett and Duffy were so informed at the initial meeting on March 1, 2014, and at a second meeting where all documents were executed by Hassett on or about March 6, 2014. Hassett and Duffy both maintained that they were seasoned veterans respecting the stock market, and "guaranteed" that effective date of the registration of the stock and warrants would not exceed four to five months.

31. Hassett and Duffy, further showed the price of the shares of HPEV were stable and rising. As of March 3, 2014, the share price on the Over the Counter Bulletin Board ("OTC") market was $1.25 per share, under the symbol WARM.

32. Hassett and Duffy, at both meetings, maintained that this was a safe investment, with shares guaranteed to appreciate due to the contracts already signed and to be signed.

33. When the Plaintiffs asked for time to consider the investment, they were told by both Hassett and Duffy, on March 1, 2014, that the shares had to be immediately purchased, or the ship would sail without them. They were told that the investment had to be made there and then.

34. As a result of the representations of HPEV, through their CEO and Consultant, the Defendants, Hassett and Duffy, the Plaintiffs purchased a total of 333,341 shares and 333,341

warrants convertible into 333,341 shares at $0.60 per warrant, at an aggregate price of $150,000 (0.45 per share and warrant), executing the purchase and sale agreements between March 1, 2014 and March 3, 2014. The individual purchases by each Plaintiff are annexed as Schedule A, and as the contracts are identical except for the information concerning the number of shares and warrants being purchased, a representative contract is annexed hereto as Exhibit A.

35.     A registration Statement on Form S-1 was filed by HPEV with the SEC on or about April 29, 2014, and the said registration statement failed to list the shares and warrants held or to be held after issuance by the Plaintiffs, and, further, the Plaintiffs never received their warrants.

36.     Plaintiff Yeung Wang contacted Hassett and Duffy in May, 2014, and each assured him that the shares and warrants would be registered with the SEC on form S1, and warrants issued, "shortly". Plaintiff Yeung Wang was further informed by Duffy that it was only due to some technical issues that the share and warrant registration statement had not been filed with the SEC, and the filing would take place shortly. Plaintiff, Wang, informed the other Plaintiffs of the foregoing, and they agreed to wait another three months to get their warrants, and have their shares and warrants registered.

37.     After the expiration of a further sixty day period from the purchase date, and realizing that none of the Plaintiffs had received any notice of the issuance of the warrants, HPEV was again contacted by Yeung Wang in August 2014. Hassett and Duffy both assured Wang that the share registration was forthcoming and the warrants would be issued.

38.     On or about October 15, 2014, Hassett and Duffy each assured the Plaintiffs that the shares would be registered under their personal supervision.

39. By the time nine months had elapsed from the date of purchase, and the share price was beginning to fall. The Plaintiffs realized that they had been defrauded by the Defendants, jointly and severally, especially when late in the year Yeung again called, and neither Hassett nor Duffy would answer the phone, and HPEV simply "took messages" when called, but the calls were never returned. By this time the share price per share had fallen to $0.45 per share, and the warrants were worthless.

40. HPEV has never filed a registration statement, nor has it issued the promised warrants. Instead it continues to simply state that it has decided against registering the shares, and no disclosure respecting the warrants has ever been made in any filing, nor has HPEV issued such warrants.

41. In the meantime, 5,516,86 shares have been issued, diluting the Plaintiffs Holdings by approximately 8%.

42. The share price has dropped from $1.65 when the purchases were made by the Plaintiffs to $0.06 as of July 11, 2016. The warrants are now totally worthless.

43. It became readily apparent that the delay and eventual absolute refusal to issue the warrants and register the shares was simply to insure these shares could not be sold on the OTC market and thereby possibly cause the share price to go down. HPEV was using the artificially high price to raise money for working capital.

44. The contracts spoken of by Hassett and Duffy were non-existent, and therefore never materialized.

45. The Defendants, jointly and severally, had simply used the false statements about contracts signed and being signed, as well as the promise of immediate issuance of the warrants,

and the registration of the shares and warrants purchased with the SEC on form S1, making them free trading, to lure the Plaintiffs into the transaction and separate them from their cash.

46.     At all material times the individual Defendants each knew their representations were untrue, and made solely for the benefit of the Defendants, jointly and severally, at the expense of the Plaintiffs who have lost over 95% of their investment, and the Defendant, HPEV, still steadfastly refuses to issue the warrants or register the shares so they may become free trading.

<strong><u>FIRST CAUSE OF ACTION:</u></strong>

<strong><u>BREACH OF CONTRACT</u></strong>

47.     The Plaintiffs incorporate paragraphs 1to 46 herein by reference as though fully restated.

48.     All contracts, except for the name of the purchaser and his personal information, and the number of shares and warrants purchased, are identical. A representative contract, being the contract between the Plaintiff, Yeung Wang, and the Defendant, HPEV, is annexed hereto as Exhibit "A".

49.     Paragraph 1.3 of the contract clearly states that within 45 business days of the consummation of the offer of purchase and sale of $1,000,000 of stock and warrants, a registration statement on Form S-1 would be filed with the SEC, registering the shares and warrants purchased so they may become free trading upon the effectiveness of the said registration statement.

50.     Defendants, Timothy Hassett and Brian Duffy, for and on behalf of HPEV, asked the Plaintiffs to allow ninety days for the filing the Report on Form S-1, in case there were any technical matters that might slightly delay the said filing.

51.     The Plaintiffs agreed.

52.     The Plaintiffs each paid good and valuable consideration for the purchase of Shares (*See* Schedule A), and executed the contracts. The Defendants accepted the consideration, signed the contracts, and returned one copy to each Plaintiff (e.g. *See* Exhibit A).

53.     There was a valid contract between each Plaintiff and the Defendant, HPEV.

54.     The Defendants breached the contracts by failing to register the shares and warrants as agreed to. The failure was purposeful, as clearly shown by the statement in the Report on Form S1 filed with the Securities and Exchange Commission on January 11, 2016, wherein at page 19 the Corporate Defendant, as a risk of investment, clearly states that the Defendant chose not to file the registration statement respecting the shares and warrants purchased by the Plaintiffs.

55.     The Plaintiffs, as a result of the failure to file the registration statement as required by the Defendant, HPEV, have lost over 95% of the value of the stock as purchased.

56.     In March of 2014, the shares had a value of $1.25-$1.65 per share. In June and July of 2016 the shares have a value of $0.06 per share.

57.     As a direct result of the breach of contract by the Defendant, HPEV, the Plaintiffs have lose a minimum of $142,500.00  on the 333,341 shares purchased, based on the price paid per share, and over $396,370 based on the market price of the said shares. To this must be added the profit obtainable on the warrants, which was a minimum of $200,000.

58.     The failure to register the stock was not a matter of accident, oversight, or simple negligence. It was done to prevent the Plaintiffs from selling their shares and possibly affecting the value per share of the stock of the corporate defendant. This allowed the Corporate Defendant to raise millions of dollars, and file registration statements to register the shares of the

major investors, while at the same time refusing to include the shares of the Plaintiffs in such registrations.

59.     The Defendant Tim Hassett is a senior corporate executive of HPEV, and directly benefited both by enticing the Plaintiffs to invest in "his" company, and then to refuse to register the said shares.

60.     The Defendant, Brian Duffy, knew at all material times that the company had no intention of registering the shares purchased by the Plaintiffs, as he claimed to be directly involved with the company and its affairs, a comment reinforced by the Defendant Tim Hassett.

61.     The actions of the Defendants, jointly and severally, were self-serving and if left unpunished would lead to wholesale manipulation of the stock markets through selective registration of purchased shares as and when the corporations chose, undermining the market for private investment by smaller individuals, and then leaving totally at the mercy of the corporations respecting their ability to recoup any of their investment through the sale of shares. This is totally against public policy, and public policy as codified in the Securities Act of 1933, as amended, the Exchange Act of 1934, as amended, and the rules promulgated under each.

62.     The actions of the Defendants are therefore malicious, self-serving, against public policy, and purposeful.

63.     The Defendants should be subject to punitive damages in the sum of $$1,190,027, jointly and severally.

64.     The Defendants should be subject to exemplary damages to discourage actions of this kind by other corporations and corporate executives. Exemplary damages in the sum of $$1,190,027 are therefore demanded, both jointly and severally.

## SECOND CAUSE OF ACTION:

## BREACH OF THE EXCHANGE ACT OF 1934,

## SECTION 10(B); BREACH OF SEC RULE 10b-5

65.     The Plaintiffs incorporate paragraphs 1to 64 herein by reference as though fully restated.

66.     The corporate defendant, HPEV, is a Nevada corporation with offices in Florida.

67.     The individual defendants, Timothy Hassett, and Brian Duffy, are Florida residents, who came to the State of New York to sell shares of the corporate defendant, and the proceeds of the sales were deposited in New York or Florida for the use of the corporate defendant in Florida.

68.     This transaction was one of interstate Commerce as the shares of a Nevada Corporation (HPEV) were sold in New York, with the funds being utilized in Florida.

69.     As abovestated, the Defendants Timothy Hassett, and Brian Duffy flew from Florida to New York to sell shares and warrants to the Plaintiffs. On or about March 1, 2016, Defendants Hassett and Duffy met with the plaintiffs to entice them into purchasing shares and warrants of HPEV through a subscription agreement which he said was exempt from the normal registration rules promulgated by the Securities and Exchange Commission.

70.     The major concern of the Plaintiffs was that as unregistered securities, they were illiquid, and could not be sold should the share price falter on the OTC market. They so informed the Defendants, as stated in the Facts section, above. The Defendants, Hassett and Duffy, for and on behalf of HPEV, whom they represented, maintained that this subscription was part of a larger subscription that was ready for the registration of the shares by the filing of a registration statement on Form S1 with the SEC. They specifically pointed out paragraph 1.3 of the

12

subscription agreement (see Exhibit A) which said that the shares would be registered 45 days after the sale of $1,000,000 of shares and warrants of HPEV. They jointly maintained that the $1,000,000 had been raised, and these shares and warrants were the last of the shares and warrants to be sold at this special price.

71.     Hassett and Duffy further maintained that approximately 90 days should be allowed, in case there were any administrative problems. The plaintiffs agreed.

72.     Hassett and Duffy further stated that there were millions of dollars' worth of contracts signed and ready to be signed, which would be reported very shortly.

73.     But for the representation respecting registration and imminent contracts, the Plaintiffs would not have purchased the shares and warrants.

74.     The shares and warrants were purchased in reliance of the statements of Hassett and Duffy respecting registration.  The Plaintiffs relied on Hassett's statements as he was a senior officer and director of HPEV, and Duffy claimed to be the party who had put together the Subscription Agreement, and personally knew that the $1,000,000 had been raised, and the contracts were ready to sign.

75.     The Defendants collected the payments for shares, and Hassett, as Chairman of the Board of Directors, executed each agreement on behalf of HPEV.

76.     At all material times Hassett and Duffy knew the representations respecting the filing of a registration statement were false. This is shown by the statement in an S1 Filing made later the same year stating HPEV had no intention of filing the registration statement on behalf of the Plaintiffs. Instead, HPEV registered other shares for raising further funds.

77.     The gain to HPEV was in preventing the Plaintiffs from selling their shares into the market and thereby lowering the price of the stock. Thus shares could be sold at higher prices.

78.     The shares were subsequently diluted, and to this day never registered. The warrants have never been issued.

79.     The share value has eroded from $1.25 at the time of the subscription to $0.06 in July, 2016.

80.     When asked to register the shares and issue the warrants, HPEV, Hassett, and Duffy, first promised to do so, and then simply refused, and continue to refuse to reply to the request of the Plaintiffs.

81.     The Plaintiffs have lost $1.19 per share as a result of the material misrepresentation of the Defendants.

82.     The gross amount lost by the Plaintiffs is 396,376 on the shares plus a further $200,000 on the warrants.

83.     They have also lost the opportunity to invest the funds into other projects.

84.     As shown above the misrepresentations were purposeful, relied upon by the Plaintiffs, and resulted in material gain by the Defendants (preventing the sale of the shares, so further funds could be obtained at more favorable prices), and material loss by the Plaintiffs.

85.     Scienter is obvious as the Defendants knew that but for the promise of registration and the existence of non-existent contracts, the shares  and warrants would never have been purchased. Further, scienter is clear in the refusal to issue the warrants. These were issuable immediately upon the closing of the transaction, and the fact that they were not and have not since been issues is a clear indication that the misstatements were purposeful, and known to the

14

Defendants before the sale. They, by their actions, showed that there was never any intention of registering the shares or issuing the warrants.

86.    Had the failure to register not occurred, the Plaintiffs would not have had any loss, as the shares could have been sold before dilution, a forward split of the shares, and the increase of debt caused the share price to erode.

87.    Further, the Defendants clearly gained by the refusal to issue the warrants and register the shares as free trading by filing a Registration Statement on Form S1 with the SEC, in that they could trade the shares of HPEV at a higher value, and raise money easier, and have larger value to HPEV, at the expense of the Plaintiffs, who have lost virtually their whole investment.

88.    Given the foregoing, the Defendants, jointly and severally, have contravened Section 10b of the Exchange Act of 1934 (15 U.S.C. § 77j) and Rule 10b-5 of the SEC (17 CFR 240.10b-5).

89.    As result of the foregoing Plaintiffs have lost $596,376, and as this was a purposeful act meant simply to enrich the Defendants to the detriment of the Plaintiffs, as well as clearly flying in the face of public policy respecting the raising of capital by small public companies, Plaintiffs claim punitive damages in the sum of $1,190,027, exemplary damages in the sum of $1,190,027, and reasonable Attorney fees.

### THIRD CAUSE OF ACTION

### COMMON LAW FRAUD

90.    The Plaintiffs incorporate paragraphs 1 to 89 herein by reference as though fully restated..

91.     Plaintiffs specifically repeat and realleges paragraphs 65-88 above.

92.     Defendants, in perpetrating the foregoing, have committed a civil fraud upon the Plaintiffs. They acted with scienter on the days and dates abovementioned making statements upon which the Plaintiffs relied to the detriment of the Plaintiffs, and the financial gain of the Defendants.

93.     But for the statements respecting the issuance of warrants, registration of shares and warrants, and the existence of contracts which were imminently going to result in major cash flows to HPEV, the Plaintiffs would never have purchased the shares and warrants. Even the contracts issued by the Defendants for the subscription associated with the purchase of shares and warrants were fraudulent, as the key terms therein respecting registration of the shares and warrants and the issuance of the warrants were fraudulent, as HPEV did not issue the warrants nor register the shares and warrants, and knew they would not at the time the Plaintiffs were induced to part with their investment.

94.     Further proof of scienter is the fact that HPEV has never registered the initial shares and warrants sold pursuant to the Subscription Agreement, even though they had promised to do so in the said contracts.

95.     As result of the foregoing Plaintiffs have lost $596,376 (calculated as abovestated), and as this was a purposeful act meant simply to enrich the Defendants to the detriment of the Plaintiffs, as well as clearly flying in the face of public policy respecting the raising of capital by small public companies, Plaintiffs claim punitive damages in the sum of $1,190,027, exemplary damages in the sum of $1,190,027, and reasonable Attorney fees.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE AND GROSS NEGLIGENCE

96.     The Plaintiffs incorporate paragraphs 1to 95 herein by reference as though fully restated.

97.     As a corporation and corporate executives selling shares of their company to the public, the Defendants had a duty to the public to avoid material misrepresentations that they, jointly and severally, knew, or should have known, would be relied upon in the making of financial decisions generally, and the decision to purchase the shares and warrants of HPEV pursuant to the Subscription Agreement executed by the Plaintiffs (*See* Exhibit for copy of the Subscription Agreement).

98.     The Defendants also owed a duty to the public, and to the Plaintiffs, to make representations that were materially and substantially correct, as they would be relied upon in making financial decisions respecting the purchase of Equity in HPEV and holding and selling the same.

99.     Both the contract and the representations of Hassett and Duffy lead the Plaintiffs to conclude that their investment was relatively secure, that they would be issued their warrants on or near to closing, and their warrants and shares would be registered in a filing with the SEC of a Registration Statement on Form S1 within 30-90 days of the acceptance of the Subscription agreement under which the Plaintiffs purchased the shares and warrants of HPEV, and would be free trading at a reasonable time thereafter.

100.     The Plaintiffs relied on these representations. The Defendants knew or should have known that the written and oral representations would be relied upon.

101.    By making representations that would not be kept respecting registration of shares or issuance of the warrants, the Defendants knew or should have known that given HPEV's actions respecting fund raising, diluting the shares, authorizing the increase of authorized capital, and registering shares in priority to those of the Plaintiffs, as well as increasing debt, the Plaintiffs would sustain losses through the erosion of share price.

102.    The continued refusal to register the said shares and warrants was careless, wanton, and grossly negligent in the lack of regard of the Defendants for the Plaintiffs, as the losses were foreseeable, preventable, and rectifiable, but for the recklessness of the Defendants in failing to register the shares and issue the warrants, and continuing to fail to register the shares or issue the warrants through the date hereof.

103.    As a result of the negligence and gross negligence of the Defendants, the Plaintiffs sustained damages in the sum of 596,376, plus lost opportunity cost and lost interest.

104.    On the negligence of the Defendants, the Plaintiffs claim damages in the sum of $596,376, plus interest at 10% per anum to commence on the date the Subscription Agreements were executed.

105.    On the gross negligence of the Defendants, the Plaintiffs claim treble damages in the sum of $1,800,000, plus their attorney fees.

**FIFTH CAUSE OF ACTION**

**RESCISSION- WITH LEGAL FEES.**

106.    The Plaintiffs incorporate paragraphs 1to 105 herein by reference as though fully restated.

107.   In the alternative, the Plaintiffs clearly relied upon the issuance of warrants, and the registration of shares and warrants as a major key to investing in HPEV, where the Defendants did not, as evidenced by their refusal to issue the warrants or register the shares and warrants purchased by the Plaintiffs, as agreed to.

108.   Given the foregoing, there was obviously no consensus ad idem respecting the Subscription Agreement.

109.   The foregoing being the case, as the exact loss sustained by the Plaintiffs cannot be calculated with certainty, given the events that transpired after the sale of shares, including registration on Form S1 of shares in priority to those of the Plaintiffs, dilution of shares, increases in debt, and increases in authorized capital of HPEV, the only proper remedy is rescission of the Subscription Agreement.

110.   The Plaintiffs claim their investment in the sum of $396,376, opportunity cost, being the value of the shares and warrants at the end of six months following the execution of the Subscription Agreement, in the sum $84,500, interest at 10% per anum from March 3, 2014, and their attorney fees in this matter.

111.   In the event that there was no consensus ad idem, the Plaintiffs have no other remedy in law.

WHEREFORE, the Plaintiffs claim against the Defendants, jointly and severally:

**ON THE FIRST CAUSE OF ACTION**, damages in the sum of $396,376, exemplary damages in the sum of 1,190,027 punitive damages in the sum of $1,190,027, costs of the action, and attorney fees on an attorney/client basis;

**ON THE SECOND CAUSE OF ACTION**, damages in the sum of $396,376,

exemplary damages in the sum of 1,190,027 punitive damages in the sum of $1,190,027, costs of

the action, and attorney fees on an attorney/client basis;

**ON THE THIRD CAUSE OF ACTION**, damages in the sum of $396,376,

exemplary damages in the sum of 1,190,027 punitive damages in the sum of $1,190,027, costs of

the action, and attorney fees on an attorney/client basis;

**ON THE FIRST CAUSE OF ACTION**, damages in the sum of $396,376,

exemplary damages in the sum of 1,190,027 punitive damages in the sum of $1,190,027, costs of

the action, and attorney fees on an attorney/client basis;

**ON THE FOURTH CAUSE OF ACTION**, damages in the sum of $396,376

with interest thereon at 10% per anum from March 3, 2014, and, if gross negligence is found,

exemplary damages in the sum of 1,190,027 punitive damages in the sum of $1,190,027, costs of

the action, and attorney fees on an attorney/client basis;

**ON THE FIFTH CAUSE OF ACTION**, damages in the sum of $480,876, with

interest thereon at 10% per anum from March 3, 2014, costs of the action, and attorney fees on

an attorney/client basis; and,

Such other and further damages and awards as this Court deems just and proper

given the facts and circumstances of this matter.

DATED: this 20th day of July, 2016.

Kenneth K. Ho, Esq.
Attorney for the Plaintiffs
136-19 38th Avenue, 4th Floor
Flushing, New York 11354
Phone: (718) 886-1541
Fax:  (718) 762-6913
Email: kenkhoattorney@yahoo.com

## SCHEDULE A

### PURCHASES OF SHARES BY PLAINTIFFS IN HPEV

| DATE | NAME | NUMBER OF SHARES PURCHASED | PRICE PAID FOR SHARES (\$ 0.45 PER SHARE) | WARRANTS PURCHASED |
|---|---|---|---|---|
| 6-Mar-14 | GARY SZE KONG | 55,556.00 | \$25,000.00 | 55,556.00 |
| 6-Mar-14 | YEUNG WANG | 22,223.00 | \$10,000.00 | 22,223.00 |
| 6-Mar-14 | LIN XUI YING | 11,112.00 | \$5,000.00 | 11,112.00 |
| 6-Mar-14 | XIN LI | 33,334.00 | \$15,000.00 | 33,334.00 |
| 6-Mar-14 | ZHI-FENG CAI | 22,223.00 | \$10,000.00 | 22,223.00 |
| 6-Mar-14 | TOMMY CHANG | 22,223.00 | \$10,000.00 | 22,223.00 |
| 6-Mar-14 | KAM-CHOW KONG | 11,112.00 | \$5,000.00 | 11,112.00 |
| 6-Mar-14 | LIN CHI CHU | 11,112.00 | \$5,000.00 | 11,112.00 |
| 6-Mar-14 | FAI LAM | 11,112.00 | \$5,000.00 | 11,112.00 |
| 6-Mar-14 | SZE PING CHENG | 33,334.00 | \$15,000.00 | 33,334.00 |
| 6-Mar-14 | STANLEY HOK KOO KAM | 50,000.00 | \$22,500.00 | 50,000.00 |
| 6-Mar-14 | JIMMY SHAO | 50,000.00 | \$22,500.00 | 50,000.00 |
| 6-Mar-14 | **TOTAL** | 333,341.00 | \$150,000.00 | 333,341.00 |

# VERIFICATION

STATE OF NEW YORK   )
COUNTY OF QUEENS   ) SS:

Gary Sze Kong, being duly sworn deposes and says:

That he has read the foregoing Summons, Complaint, and Civil Cover Sheet and knows the contents thereof;

That the same is true of his own knowledge, except as to those matters therein stated or alleged by co-plaintiffs, and as to those matters he believes them to be true and correct.

_____
Gary Sze Kong

Sworn to before me this 21st day of
July, 2016.

_____
Notary Public

HO KENNETH KANGMIN
Notary Public, State of New York
No. 02HO6251973
Qualified in Queens County
Commission Expires November 28, 2019